# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JAMES HOPE and PAMELA HOPE,** | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action Number |
| v. | ) | **5:12-cv-00736-AKK** |
| | ) | |
| **BSI FINANCIAL, INC., et al.;** | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

James Hope and Pamela Hope ("Plaintiffs") bring this action for damages under Alabama law and the Fair Debt Collection Practices Act ("FDCPA"), alleging primarily that BSI Financial Inc. ("BSI"), First Bank of Richmond ("First Bank") and Federal National Mortgage Association ("Fannie Mae") (collectively "Defendants") participated in a series of wrongful acts in connection with Plaintiffs' mortgage. *See* doc. 1-1; doc.10. Defendants now move for partial dismissal of Plaintiffs' claims, doc. 3, and Plaintiffs have responded. Doc. 11. For the reasons stated below, Defendants' motion is **GRANTED** as it relates to Plaintiffs' invasion of privacy claim arising under the Gramm-Leach-Bliley Act and **DENIED** in all other respects.

# I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, ---U.S.---, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 129 S. Ct. at 1949 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 1949 (citing *Bell Atl. Corp.*, 550 U.S. at 557).

Rule 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation

2

omitted).  The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 129 S. Ct. at 1950.

On a motion to dismiss under Rule 12(b)(6), the court accepts the plaintiff's allegations as true.  *See, e.g.*, *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).  However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth.  *Iqbal*, 129 S. Ct. at 1950.

## II.  FACTUAL BACKGROUND[1]

This dispute arises out of a mortgage loan Plaintiffs obtained in January of 2002.  Doc.1-1 at 5 ¶ 9-10, 10 ¶ 57.  BSI Financial, Inc. and First Bank of Richmond both collected on the loan after BSI assigned at least part of its interest in the loan to First Bank on May 1, 2009. *Id.* at 5 ¶ 17.  Prior to the actual filing of the assignment, First Bank and Plaintiffs entered into a loan modification

---

[1] "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009).

agreement on May 6, 2009, whereby Plaintiffs would make monthly principal and interest payments of $424.19 to BSI beginning on June 1, 2009. *Id*. at 6 ¶ 23, 27, 29. Both the assignment from BSI to First Bank and the modification between First Bank and Plaintiffs was recorded in Madison County Probate Court on June 25, 2009. *Id*. at 5-6 ¶¶ 18, 25. Plaintiffs allege that BSI holds equal responsibility under the modification agreement because of its extensive involvement and receipt of payments under the agreement. *Id*. at 6 ¶ 28-29.

According to Plaintiffs, some time between May 2009 and 2010, BSI and First Bank began demanding payments above the amount set by the modification agreement. *Id*. at 7 ¶ 32. When Plaintiffs failed to make the increased payments, Defendants hired Moss Codilis to send default letters to Plaintiffs. *Id*. at 7 ¶ 33. In response, Plaintiffs hired an attorney to write a letter to BSI demanding an explanation for the alleged breach of the modification agreement. *Id*. at 7 ¶ 34. Instead of responding to Plaintiffs' attorney, Defendants allegedly hired a foreclosure law firm to write Plaintiffs directly, stating that Plaintiffs had defaulted, that Defendants had accelerated the loan, and that Plaintiffs had thirty days to cure the default. *Id*. at 7 ¶ 35. Plaintiffs' attorney responded with another letter informing Defendants that they had violated the loan modification agreement and requesting that Defendants cancel the foreclosure sale. *Id*. at 7-8 ¶¶ 37-38.

4

Ultimately, in November of 2010, BSI closed the foreclosure file and canceled the foreclosure proceedings. *Id*. at 8 ¶ 39.

The next year, in December of 2011, Plaintiffs again received a notice of acceleration and foreclosure from Defendants. *Id*. at 8 ¶ 40. This letter, which was purportedly copied to BSI, informed Plaintiffs of a foreclosure sale scheduled for January 12, 2012 and that the law firm writing the letter "represent[ed] Federal National Mortgage Association [("Fannie Mae")], the creditor to whom the above-referenced debt is owed." *Id*. at 8 ¶ 42-45. Plaintiffs contend that they were unaware of the assignment to Fannie Mae, but instructed their attorney nonetheless to write to Fannie Mae demanding cancellation of the foreclosure and a full accounting and payment history. *Id*. at 9 ¶ 46-47. Allegedly, this letter triggered direct emails from a BSI Loss Mitigation Specialist and Fannie Mae's attorney informing Plaintiffs of a thirty day postponement. *Id*. at 9 ¶ 52. Although Fannie Mae purportedly threatened foreclosure on January 12, 2012, First Bank did not record a transfer and assignment of the mortgage to Fannie Mae until January 13, 2012. *Id*. at 10 ¶ 54. This allegedly defective assignment was signed on behalf of First Bank and BSI by two BSI assistant vice presidents. *Id*. at 10 ¶ 58-60.

Based on these purportedly wrongful communications, assignments, and

attempts to foreclose, Plaintiffs filed an action in the Circuit Court of Madison

County alleging various claims against Defendants under Alabama law and the

Fair Debt Collection Practices Act. *See* doc. 1-1. The Defendants subsequently

removed the action to this court on March 5, 2012. Doc. 1.

## III. ANALYSIS[2]

In their amended complaint, Plaintiffs raise four claims: breach of contract,

invasion of privacy by intrusion upon seclusion, violations of the FDCPA, and

defamation. Doc. 10. Defendants move to dismiss all claims, except the breach of

contract claim, alleging that (1) they are not "debt collectors" under the FDCPA;

(2) that Plaintiffs failed to allege facts to support an invasion of privacy claim; and

(3) Plaintiffs' failed to allege "egregious circumstances" warranting damages for

emotional distress for the defamation claim. Doc. 3. These contentions are

addressed separately below.

## A.  The Fair Debt Collection Practices Act (15 U.S.C. 1692 et seq)

Defendants challenge the FDCPA claims on three grounds: (1) that their

status as debt collectors is specifically limited to FDCPA § 1692f; (2) that even

under § 1692f, they are not debt collectors under these facts; and (3) that Plaintiffs

---

[2] In the amended complaint, Doc.10, Plaintiffs withdrew Counts I, II, IV and V of the original complaint, Doc 1-1, and thus Defendants motion is **MOOT** with respect to those claims.

failed  to properly plead a cause of action under § 1692f(6).  Doc. 3 at 8-10.

1.    "Debt Collectors" Under the FDCPA

To hold an entity liable under the FDCPA, a plaintiff must first establish

that the entity is a "debt collector." *Birster v. American Home Mortgage Servicing,*

*Inc.*, No.  11-13574, 2012 WL 2913786 at *3 (11th Cir. July 18, 2012).  A "debt

collector" is

> any person who uses any instrumentality of interstate commerce or the
> mails in any *business the principal purpose of which is the collection of*
> *any debts*, or who *regularly collects or attempts to collect*, directly or
> indirectly, debts owed or due or asserted to be owed or due another.
> Notwithstanding the exceptions provided by clause (F) of the last
> sentence of this paragraph, the term includes any creditor who, in the
> process of collecting his own debts uses any name other than his own
> which would indicate a third person is collecting or attempting to collect
> such debts. *For the purposes of § 1692f(6)* of this title, such term also
> includes any person who uses any instrumentality of interstate
> commerce or the mails in any business the *principal purpose of which*
> *is the enforcement of security interests*. . .

15 U.S.C. § 1692a(6) (emphasis added).  The FDCPA, thus, requires a person or

entity to engage in "debt collection activity" in order to qualify as a debt collector.

Using this definition, Defendants assert that, as entities in the business of

*enforcing security interests* like mortgages, their attempts to foreclose are not debt

collection activities and their potential status as debt collectors is therefore limited

to § 1692f of the FDCPA.  To support this contention, Defendants rely on *Warren*

*v. Countrywide Home Loans, Inc.*, 342 F. Appx. 458 (11th Cir. Aug. 14, 2009)

(unpublished), which states that "the plain language of the FDCPA supports the. . .

conclusion that *foreclosing* on a security interest is not *debt collection activity*"

sufficient to create debt collector status.  *Id*. at 460 (emphasis added).  This

argument misses the mark because Plaintiffs have not limited the alleged wrongful

conduct to foreclosure activity.[3]  Moreover, Defendants' reliance on *Warren*

ignores that the Eleventh Circuit recently held, based on the reasoning of *Reese v.*

*Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211 (11th Cir. 2012), that "it is

apparent that an entity that regularly attempts to collect debts can be a 'debt

collector' beyond § 1692f(6) of the FDCPA, even when the entity is *also*

enforcing a security interest."  *Birster,* 2012 WL 2913786 at *3 (emphasis added).

Specifically, the *Birster* court found that use of language in communications, like

foreclosure notices, the defendant sent to the plaintiff demanding payment and

referencing debt collection was sufficient to constitute debt collection activity and

make defendants debt collectors under all sections of the FDCPA.  *Id*. at *3.

According to the court, "the fact that the letter and documents relate to the

---

[3] For example, Plaintiffs allege that Defendants contacted them directly despite
knowledge Plaintiffs were represented by an attorney, breached the loan modification agreement
by demanding higher payments, and improperly assigned the note and mortgage – all *in addition
to* purportedly wrongful conduct based on foreclosure attempts.  *See generally* doc. 10.

enforcement of a security interest do not prevent them from also relating to the collection of a debt within the meaning of 1692e." *Id*. (internal quotation marks and citation omitted).

The facts alleged here mirror *Birster*. Allegedly, the communications Plaintiffs received from all Defendants demanded payment and included language plainly describing the communication as "an attempt to collect a debt." Doc.10 at 8-9. Further, Plaintiffs contend that they received an email specifically stating that "BSI  Financial Services is a debt collector, and information you provide to us may be used to collect a debt." *Id*. In light of *Reese* and *Birster*, these alleged facts are sufficient to survive a motion to dismiss and undermine Defendants' contention that they were not engaged in debt collection activity.

Consequently, the only remaining question is whether Plaintiffs sufficiently pled that Defendants *are* debt collectors under the general definition contained within § 1692a(6). The statutory text clearly states that, to qualify as a "debt collector," the "principal purpose" of "any business" must be "the collection of debts" or that the business must "regularly collect[] or attempt[] to collect...debts." 15 U.S.C. § 1692a(6). Plaintiffs satisfied the pleading requirements by alleging that the Defendants  "are in the business of regularly collecting debts" and are not otherwise subject to an exclusion contained in § 1692a(6)(F) because "[a]ll

9

Defendants allegedly received the loan, or account, of Plaintiffs when the loan or account was allegedly in default."[4] Doc. 10 at 3.  Therefore, Defendants' motion to dismiss on the basis that they are not debt collectors is denied.[5]

2.    Sufficiently Pleading FDCPA Claims

Defendants also challenge the FDCPA claims on the basis that Plaintiffs failed to allege that Defendants took or threatened to take any action to dispossess them of the property as required by § 1692f(6).[6]  Doc. 3 at 10.  Plaintiffs, in fact, pled such an alleged violation.  Specifically, Plaintiffs allege that the mortgage assignments are not legally enforceable and that Defendants' attempted foreclosure before they even obtained the assignments.  *See e.g.*, doc. 10 at 11-12 ¶¶ 72, 74.  Put differently, Plaintiffs allege that Defendants had no present right to

---

[4] A "debt collector" does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time of assignment. 15 U.S.C. § 1692a(4).

[5] Defendants assert that classifying them as debt collectors under these circumstances would mean "the mere act of advising a consumer debtor that a foreclosure sale was scheduled would violate the FDCPA because the grantee does not have the right to possession until after the sale." Doc. 3 at 10. This argument is tenuous in that the Defendants' proposed interpretation would instead create a loophole in the FDCPA that essentially would render it applicable only to efforts to collect unsecured debts, *see Reese*, 678 F.3d 1211 at 1217-18, and it again ignores that Plaintiff has alleged conduct exceeding merely informing a debtor of a foreclosure sale.

[6] Section 1692f(6) states that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt" such as by "[t]aking or threatening to take any nonjudicial action to effect disposition or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6)(A).

possession and lacked an enforceable security interest at the time they threatened foreclosure.  Further, Plaintiffs allege that "Defendants . . . have threatened multiple times to foreclose on Plaintiffs."  *Id*. at 11 ¶ 72. Since mortgage foreclosure is essentially termination of a mortgagor's interest and repossession of the mortgaged property, *see* BLACK'S LAW DICTIONARY (9th ed. 2009), the court finds that  Plaintiffs sufficiently allege that Defendants attempted to dispossess them of their property.  Additionally, although the statute specifies "nonjudicial action," the Eleventh Circuit has found a plaintiff's claim to survive a motion to dismiss where, as here, the plaintiff alleges that the defendant wrongfully instituted foreclosure proceedings or had no legal right to foreclose.  *See Minnifield v. Johnson & Freedman*, LLC, 448 Fed.Appx.  914, 916 (11th Cir. 2011).  Indeed, the facts Plaintiffs allege create a reasonable inference that Defendants attempted non-judicial foreclosure.[7]  Therefore, Plaintiffs sufficiently plead a cause of action under § 1692f(6).

## B.  Invasion of Privacy by Intrusion Upon Seclusion

Defendants contend next that the intrusion upon seclusion claim is based

---

[7] In Alabama, non-judicial foreclosure generally involves simply giving the mortgagee notice of foreclosure, providing public notice of sale, and ultimately a sale of the collateral property. *See generally McAleer v. Durry*, 593 So. 2d 1021 (Ala. 1992).  Judicial foreclosure, on the other hand, requires the mortgagor to institute foreclosure proceedings through litigation.

upon language in the FDCPA, and that since Defendants are not "debt collectors," the claim fails to state a cognizable claim.  Doc. 3 at 8-9.  Defendants overlook that Plaintiffs allege invasion of privacy under the FDCPA, 15 U.S.C. § 1692(a), Alabama law, and the Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. § 6801(a). Doc. 10 at 15 ¶¶ 96-98.  Because Defendants can, in fact, qualify as "debt collectors" under the FDCPA, see *supra*, the court limits its discussion of the sufficiency of Plaintiffs' complaint to Alabama law and the GLBA.

> 1.   Invasion of Privacy under Alabama Law

The tort of invasion of privacy includes "intruding into the plaintiff's physical solitude or seclusion[.]" *Johnson v. Fuller*, 706 So. 2d 700, 701 (Ala. 1997).  Alabama has adopted the Restatement (Second) of Torts definition for this type of invasion, i.e.

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

*See Phillips v. Smalley Maintenance Services, Inc.*, 435 So. 2d 705, 708 (Ala. 1983); Restatement (Second) of Torts § 652B (1977).  To withstand a motion to dismiss, a plaintiff may allege a "physical intrusion into a place in which the plaintiff has secluded himself," "an invasion of psychological solitude," or

"examination into [the plaintiff's] private concerns" – so long as the plaintiff also asserts that the invasion would be offensive to a reasonable person. *Phillips*, 435 So. 2d at 710-11, quoting Restatement § 652B cmt. a.  The Restatement further provides that "hounding the plaintiff" to collect a valid debt can be a sufficiently offensive intrusion to satisfy the elements for this form of invasion of privacy. Restatement § 652B cmt. d.

To support their invasion of privacy claim, Plaintiffs assert that Defendants "have threatened multiple times to foreclose on Plaintiffs when Defendants have no right to do so" and cite multiple examples of Defendants' collection attempts that purportedly caused "mental anguish, damage to reputation, [and] economic damages[.]"  Doc. 10 at 11 ¶ 72; 14 ¶ 90.  Based on these allegations, and the reasonable inferences the court can draw from them, the complaint states a facially plausible claim for relief.  *See Iqbal*, 129 S. Ct. at 1949.  Therefore, the motion to dismiss this claim is denied.

2.    Invasion of Privacy Under the Gramm Leach Bliley Act

Although the GLBA provides that "each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information," 15 U.S.C. § 6801(a), "no private right of action exists for an alleged

violation of the GLBA." *Downs v. Regions Bank*, – F. Supp. 2d. –, No.

2:08cv758-MHT, 2010 WL 381116 at *5 (M.D. Ala. 2010) (quoting *Dunmire v.*

*Morgan Stanley*, 475 F.3d 956, 960 (8th Cir.  2007); *see also* 15 U.S.C. § 6805.

Therefore, Plaintiffs' claim for invasion of privacy under the GLBA fails as a

matter of law and Defendants' motion is granted as to this allegation.

## C.  Defamation

Finally, relying on the elements of an outrage claim, Defendants challenge

the defamation claim on the basis that it "references non-specific conduct in the

form of a claim for emotional distress" and that "recovery for such claims should

be allowed only in extreme cases, amounting to egregious circumstances."  Doc. 3

at 7.  A defamation claim, however, does not require a plaintiff to assert

"egregious circumstances," rather, it requires only "that the defendant was at least

negligent . . .in publishing . . . a false and defamatory statement to another . . .

concerning the plaintiff, which is either . . . actionable per se . . . or . . . actionable

per quod." *Federal Credit, Inc. v. Fuller*, 72 So. 3d 5, 9-10 (Ala. 2011).  The

court presumes reputational damage and deems the alleged defamatory statement

actionable per se if it "exposes the plaintiff to public ridicule or contempt."  *Gary*

*v. Crouch*, 867 So. 2d 310, 316 (Ala. 2003).  Otherwise, the defamation is

actionable per quod and the plaintiff must allege special harm.  *Federal Credit,*

*Inc.*, 72 So. 3d at 10.  Moreover, when reviewing a motion to dismiss a defamation claim, the court must look to the publication as a whole, including the circumstances of its publication, and determine whether the language used is capable of a defamatory meaning "according to the sense in which they appear to have been used and the idea they are adapted to convey to those who read them." *Campbell v. Seabury Press*, 468 F.Supp. 298, 300 (N.D. Ala. 1979) (quoting *McGraw v. Thomason*, 93 So.2d 741,744 (Ala. 1957)); *Marion v. Davis*, 114 So. 357, 359 (Ala. 1927).

Contrary to Defendants' contention, Plaintiffs have sufficiently pled a prima facie case of defamation.  Plaintiffs assert that Defendants intentionally published "false statements regarding defaults, foreclosures, and other aspects related to Plaintiffs . . . in at least the newspaper of general circulation in Plaintiffs' county." Doc. 10 at 17 ¶¶ 109-110.  The allegation that these statements have caused injuries including mental anguish, *id.* at 18 ¶ 112, appears to simply be an attempt to meet the pleading standard for defamation actionable per quod – "special harm." Moreover, in construing the foreclosure publications in connection with the rest of Plaintiffs' assertions, and assuming the statements were indeed false, the court finds that Defendants' alleged false statements are capable of defamatory meaning – namely, that Plaintiffs could not or would not make their mortgage

15

payments and were being rightfully dispossessed of their property.  Therefore,

Plaintiffs have properly pled a claim for defamation.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is

**GRANTED** with regard to Plaintiffs' invasion of privacy claim under the GLBA,

but **DENIED** in all other respects.

**DONE** this 26th day of October, 2012.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE